UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:14-CV-22079 – Ungaro/Otazo-Reyes

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*<br>JAMES A. BURKS, M.D., and JAMES D.<br>DAVENPORT, M.D., | ) <br> ) <br> ) <br> ) |
| Plaintiffs/Relators, | ) <br> ) |
| vs. | ) <br> ) |
| JOHN R. DYLEWSKI, M.D., BAPTIST<br>HEALTH SOUTH FLORIDA, INC. d/b/a<br>BAPTIST HEALTH SOUTH FLORIDA, and<br>d/b/a MIAMI CARDIAC & VASCULAR<br>INSTITUTE; BAPTIST HOSPITAL OF<br>MIAMI, INC.; and SOUTH MIAMI<br>HOSPITAL, INC., d/b/a SOUTH MIAMI<br>HEART CENTER, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**<u>BAPTIST DEFENDANTS' MOTION TO DISMISS RELATORS' AMENDED
COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.      RELATORS FAIL TO PLEAD CLAIMS WITH PARTICULARITY AS
        REQUIRED BY RULE 9(b), WHICH HAS BEEN STRICTLY APPLIED BY
        THE ELEVENTH CIRCUIT IN FALSE CLAIMS ACT CASES. ................................... 3

        A.      Relators Fail to Identify With Particularity A Single False Claim Actually
                Submitted to the Government by the Baptist Defendants, Which Requires
                Dismissal of All of Relators' Claims. ................................................................ 4

        B.      Relators Fail to Plead False Certifications By the Baptist Defendants.................. 9

        C.      Relators Do Not Plead the Required "Who, What, Where, When, and
                How" as to Any Improper Practices by the Baptist Defendants.......................... 11

                1.      Rule 9(b) Does Not Permit Group Pleading Against "Defendants.". ....... 11

                2.      Relators Also Do Not Adequately Plead the When, Where, How
                        and Why of Any Fraud by the Baptist Defendants, As Rule 9(b)
                        Requires ..................................................................................... 12

II.     RELATORS' ALLEGATIONS OF "SUBOPTIMAL" OR "IMPROPERLY
        PERFORMED" PROCEDURES ARE NOT ACTIONABLE UNDER THE FCA,
        AS THE FCA IS NOT A FEDERAL MEDICAL MALPRACTICE STATUTE. ........... 13

III.    RELATORS' COUNT III FOR REVERSE FALSE CLAIMS SHOULD BE
        DISMISSED AS REDUNDANT OF THEIR FALSE CLAIMS ALLEGATIONS. ....... 14

IV.     RELATORS DO NOT PLEAD VEIL-PIERCING OR DIRECT
        PARTICIPATION IN SUBMISSION OF FALSE CLAIMS AS NECESSARY
        TO STATE ANY CLAIM AGAINST PARENT CORPORATION BAPTIST
        HEALTH.................................................................................................... 15

        A.      Relators Do Not Sufficiently Plead Direct Liability of Baptist Health for
                Its Own Role in the Submission of False Claims. .............................................. 16

      B.      Relators Have Not Pleaded Veil-Piercing Against Baptist Health, Either. .......... 17

V.      THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE STARK LAW, WHICH IS ANOTHER REASON COUNT IV MUST BE DISMISSED. ...................... 18

VI.     THE FCA'S STATUTE OF LIMITATIONS BARS ALL MEDICAL NECESSITY CLAIMS BEFORE JUNE 5, 2008 AND ALL STARK-RELATED CLAIMS BEFORE JANUARY 27, 2009. ..................................................... 19

CONCLUSION ................................................................................................................. 20

REQUEST FOR HEARING ............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      **Page(s)**

*Ameritox, Ltd. v. Millennium Labs. Inc.*,
    803 F.3d 518 (11th Cir. 2015) ...................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................4

*Britton v. Lincare, Inc.*,
    No. 15-11897, 2015 U.S. App. LEXIS 21373 (11th Cir. Dec. 10, 2015)...................3, 5, 7, 11

*Brooks v. Blue Cross Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997)..............................................................................11

*Corsello v. Lincare, Inc.*,
    428 F.3d 1008 (11th Cir. 2005) ......................................................................3-4, 7, 11

*Cent. Hudson Gas & Elec. Corp. v. Combustion Eng'g. Inc.*,
    No. 86 Civ. 3061, 1989 U.S. Dist. LEXIS 8509 (S.D.N.Y. July 26, 1989)............................20

*Dhillon v. Zions First Nat'l Bank*,
    462 F. App'x 880 (11th Cir. 2010) ...........................................................................4

*Foster v. Savannah Communication*,
    140 Fed. Appx. 905 (11th Cir. 2005).......................................................................19

*Grace v. Rosenstock*,
    169 F.R.D. 473 (E.D.N.Y. 1996), *aff'd*, 228 F.3d 40 (2d Cir. 2000) .....................................20

*Hopper v. Solvay Pharmaceuticals, Inc.*,
    588 F.3d 1318 (11th Cir. 2009) ..............................................................................5

*In re Pharmaceutical Indus. Avg. Wholesale Price Litig.*,
    538 F. Supp. 2d 367 (D. Mass. 2008) ......................................................................15

*Maa v. Ostroff*,
    No. 12-cv-00200-JCS, 2013 U.S. Dist. LEXIS 57433 (N.D. Cal. Apr. 19,
    2013) .......................................................................................................11, 13

*Universal Health Servs. v. U.S. ex rel. Escobar*,
    136 S. Ct. 582 (Dec. 4, 2015) ...............................................................................14

*U.S. v. Gericare Med. Supply, Inc.*,
    No. 99-366, 2000 U.S. Dist. LEXIS 19661 (S.D. Ala. Dec. 11, 2000) ...................................11

*U.S. v. Lab. Corp. of Am.*,
    No. Civ.A.1:97CV2200TWT, 2001 WL 1867721 (N.D. Ga. May 16, 2001)...........................5

*U.S. v. Science Applications Int'l Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010)........................................................................................12

*U.S. v. Universal Health Servs.*,
    No. 1:07-cv-54, 2010 U.S. Dist. LEXIS 116432 (W.D. Va. Oct. 31, 2010) ...................17, 18

*U.S. ex rel. Atkins v. McInteer*,
    470 F.3d 1350 (11th Cir. 2006) ...................................................................................3, 4, 7

*U.S. ex rel. Barmak v. Sutter Corp.*,
    No. 95 CV 7637(KTD)(RLE), 2002 U.S. Dist. LEXIS 8509 (S.D.N.Y. May
    13, 2002) .....................................................................................................................12

*U.S. ex rel. Barrett v. Beauty Basics, Inc.*,
    2:13-CV-1989-SLB, 2015 U.S. Dist. LEXIS 75629 (N.D. Ala. June 11, 2015).......................9

*U.S. ex rel. Blundell v. Dialysis Clinic, Inc*,
    No. 5:05-CV-00710, 2011 U.S. Dist. LEXIS 4862 (N.D.N.Y. Jan 19, 2011)..........................14

*U.S. ex rel. Carroll v. JFK Med. Ctr.*,
    No. 01-8158-CIV, 2002 WL 31941007 (S.D. Fla. Nov. 15, 2002) ...........................................4

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
    290 F.3d 1301 (11th Cir. 2002) .......................................................................... *passim*

*U.S. ex rel. Conner v. Salina Regional Health Ctr., Inc.*,
    543 F.3d 1211 (10th Cir. 2008) .........................................................................................10

*U.S. ex rel. Conteh v. IKON Office Solutions, Inc.*,
    27 F. Supp. 3d 80 (D.D.C. 2014)........................................................................................12

*U.S. ex rel. Dolan v. Long Grove Manor, Inc.*,
    No. 10 C 368, 2014 U.S. Dist. LEXIS 98429 (N.D. Ill. July 18, 2014) ..........................8, 9, 18

*U.S. ex rel. Graves v. Plaza Med. Ctrs. Corp.*,
    10-23382-CIV-MORENO, 2014 U.S. Dist. LEXIS 143269 (S.D. Fla. Oct. 7,
    2014) .......................................................................................................................11-12

*U.S. ex rel. Heesch v. Diagnostic Physicians Group, P.C.*,
    No. 11-000364-KD-B, 2014 U.S. Dist. LEXIS 71170 (S.D. Ala. Apr. 11,
    2014)
    .............................................................................................................................16-18

iv

*U.S. ex rel. Holbrook v. The Brink's Co.*,
   2:13-CV-873, 2015 U.S. Dist. LEXIS 4951 (S.D. Ohio Jan. 15, 2015) ...................................16

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
   360 F.3d 220 (1st Cir. 2004) ...........................................................................................12

*U.S. ex rel. Klusmeier v. Bell Constructors, Inc.*,
   469 Fed. Appx. 718 (11th Cir. 2012) ...................................................................................5

*U.S. ex rel. Lee v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ..................................................................................... 11-12

*U.S. ex rel Mastej v. Health Management Assocs., Inc.*,
   591 F. App'x 693 (11th Cir. 2014) .......................................................................................7

*U.S. ex rel. Mikes v. Straus*,
   274 F.3d 687 (2d Cir. 2001)...............................................................................................14

*U.S. ex rel. Olsen v. Lockheed Martin Corp.*,
   1:09-CV-3083-JEC, 2010 U.S. Dist. LEXIS 145114 (N.D. Ga. Sept. 17, 2010)...................19

*U.S. ex rel. Osheroff v. Humana, Inc.*,
   776 F.3d 805 (11th Cir. 2015) ...........................................................................................14

*U.S. ex rel. Pecanic v. Sumitomo Electric Interconnect Prods., Inc.*,
   No. 12-cv-0602-L (NLS), 2013 U.S. Dist. LEXIS 27913 (S.D. Cal. Feb. 28,
   2013) ...............................................................................................................................15

*U.S. ex rel. Pfeifer v. ELA Med., Inc.*,
   No. 07-cv-1460, 2010 U.S. Dist. LEXIS 45656 (D. Colo. Mar. 31, 2010) .......................16, 17

*U.S. ex rel. Phillips v. Permian Residential Care Ctr.*,
   386 F. Supp. 2d 879 (W.D. Tex. 2005)................................................................................14

*U.S. ex rel. Prather v. Brookdale Senior Living Communities, Inc.*,
   No. 3:12-CV-000764, 2015 U.S. Dist. LEXIS 150468 (M.D. Tenn. Nov. 5,
   2015) .................................................................................................................................8

*U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*,
   972 F. Supp. 2d 1317 (N.D. Ga. 2013) ................................................................................8

*U.S. ex rel. Sanchez v. Lymphatx, Inc.*,
   596 F.3d 1300 (11th Cir. 2010) ..........................................................................................3

*U.S. ex rel. Schaengold v. Memorial Health, Inc.*,
   4:11-cv-58, 2014 U.S. Dist. LEXIS 169555 (S.D. Ga. Dec. 8, 2014) ............................ 16-18

*U.S. ex rel. Taylor v. Gabelli,*
   345 F. Supp. 2d 313 (S.D.N.Y. 2004) ................................................................15

*U.S. ex rel. Thomas v. Bailey,*
   No. 4:06CV00465 JLH, 2008 U.S. Dist. LEXIS 91221 (E.D. Ark. Nov. 6,
   2008) ..................................................................................................................10

*U.S. ex rel. Thomas v. Siemens AG,*
   708 F. Supp. 2d 505 (E.D. Pa. 2010) ..................................................................15

*U.S. ex rel. Westfall v. Axiom Worldwide, Inc.,*
   No. 8:06-cv-571-T-33TBM, 2009 WL 1424213 (M.D. Fla. May 20, 2009) ............7

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co.,*
   389 F.3d 1251 (D.C. Cir. 2004) ..........................................................................13

*U.S. ex rel. Wilson v. Crestwood Healthcare, L.P.,*
   No. CV-11-S-3361-NE, 2012 U.S. Dist. LEXIS 69763 (N.D. Ala. May 18,
   2012) ....................................................................................................................8

**Statutes**

31 U.S.C. 3729(a)(1)(A) ............................................................................................7, 14

31 U.S.C. § 3729(a)(1)(B) ..........................................................................................7, 14

31 U.S.C. § 3729(a)(1)(G) ..........................................................................................8, 15

31 U.S.C. § 3729(b)(2) ....................................................................................................4

31 U.S.C. § 3731(b)(1) ..................................................................................................19

42 U.S.C. § 1395nn ...................................................................................................2, 19

vi

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Baptist Health South Florida, Inc. ("Baptist Health"),  Baptist Hospital of South Miami, Inc. ("Baptist Hospital"), and South Miami Hospital, Inc. ("SMH") (collectively the "Baptist Defendants") move to dismiss Relators' Amended Complaint (Dkt. 16).

## INTRODUCTION

Relators assert a hodgepodge of what they allege to be "improper," "suboptimal," or "unnecessary" medical procedures by Dr. John Dylewski.  Relators' Amended Complaint is long on adjectives about Dr. Dylewski's alleged procedures, but short on the particularized facts necessary to state a fraud claim against the Baptist Defendants under the False Claims Act ("FCA") as required by Rules 9(b) and 12(b)(6) and Eleventh Circuit precedent.  Relators' claims against the Baptist Defendants fail as a matter of law for the following reasons:

First, Relators *never identify a single false claim that was actually submitted to the government for payment.*  The Eleventh Circuit has repeatedly held that a false claim for payment is the *sine qua non* of a violation of the FCA and that failure to plead claims actually submitted to the government with specificity as required by Rule 9(b) requires dismissal.

Second, Relators' false certification claims do not satisfy Rule 9(b), as Relators do not identify any false certifications by the Baptist Defendants, with specificity or otherwise.  The Amended Complaint alleges that Dr. Dylewski certified compliance with medical necessity requirements, but does not specify any Baptist Defendant's medical necessity certification, nor do Relators allege that the Baptist Defendants certified Dr. Dylewski's compliance with medical necessity requirements.

Third, Relators fail to plead any details of improper practices by particular Baptist Defendants with the specificity required by Rule 9(b), instead relying on impermissible group

1

pleading and alleging a nearly eight-year time span. Even the "examples" given by Relators do not satisfy Rule 9(b), as they do not allege the dates of any procedures, initials of patient names, why the procedures were unnecessary, or locations at which patients were treated, as supported by indicia of reliability through Relators' personal knowledge. Relator Davenport, for example, asserts that he has personal knowledge by virtue of working "at Defendant, JOHN R. DYLEWSKI, M.D.'s medical office during 2006 to 2007," Amended Complaint ("AC") ¶ 5, but Dr. Dylewski's medical office is not in the Baptist Defendants' control, nor does Relator Davenport explain why he waited seven years to file suit (which is another ground for dismissal).

Relators' allegations of suboptimal care or improperly performed procedures do not state a cause of action under the FCA because the FCA is not a federal medical malpractice statute.

Relators' reverse false claims allegations are merely mirror-images of their affirmative FCA allegations, alleging that Defendants failed to return improperly obtained payments. These allegations fail for the same reasons the affirmative FCA claims fail, and also because the FCA's reverse false claims provision was designed to bring conduct not otherwise covered into the scope of the FCA, not merely provide a redundant method of restating the same allegations.

In addition, all of Relators' claims against corporate parent Baptist Health must be dismissed because Relators do not allege any facts to support piercing the corporate veil or direct liability of Baptist Health for its own role in the submission of false claims.

Count IV fails because there is no private right of action under the Stark Law, 42 U.S.C. § 1395nn, in addition to failing for the same reasons the FCA claims fail.

Finally, Relators' claims are barred, in part, by the FCA's statute of limitations.

Because Relators fail to state a claim under the FCA or the Stark Law, all claims against the Baptist Defendants should be dismissed.

## ARGUMENT

I. **RELATORS FAIL TO PLEAD CLAIMS WITH PARTICULARITY AS REQUIRED BY RULE 9(b), WHICH HAS BEEN STRICTLY APPLIED BY THE ELEVENTH CIRCUIT IN FALSE CLAIMS ACT CASES.**

To state a claim under the FCA, Relators must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  The Eleventh Circuit has held repeatedly that dismissal is "required" if an FCA action does not satisfy Rule 9(b).  *See, e.g., U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309-12 (11th Cir. 2002); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006); *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300 (11th Cir. 2010).  Rule 9(b) and Eleventh Circuit precedent require that an FCA complaint must be pleaded with particularity, including "that the United States actually paid a false claim," identified by relators with specificity, and must set forth "facts as to time, place, and substance of the defendant's alleged fraud, including the details of the defendant's allegedly fraudulent acts, when they occurred and who engaged in them." *U.S. ex rel. Britton v. Lincare, Inc.*, No. 15-11897, 2015 U.S. App. LEXIS 21373, at *5-6 (11th Cir. Dec. 10, 2015) (affirming dismissal with prejudice of complaint asserting FCA claims "to the extent" Medicaid was billed).

The purpose of Rule 9(b) is two-fold:  to "alert[] defendants to the precise misconduct with which they are charged," and "protect[] defendants from frivolous suits, or 'spurious charges of immoral and fraudulent behavior.'" *Clausen*, 290 F.3d at 1310, 1313, n.24.  "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements." *Id.*  Relators'

allegations fall well short of satisfying Rule 9(b)'s particularity requirement and expose the

Baptist Defendants to the harmful impacts that Rule 9(b) is intended to prevent.[1]

> **A.    Relators Fail to Identify With Particularity A Single False Claim Actually Submitted to the Government by the Baptist Defendants, Which Requires Dismissal of All of Relators' Claims.**

A "claim" under the FCA is defined as a "request or demand…for money or property."

31 U.S.C. § 3729(b)(2).  The "submission of a claim is … the *sine qua non* of a False Claims Act

violation." *Clausen*, 290 F.3d at 1311.  In the Eleventh Circuit, to satisfy Rule 9(b), a relator

must allege with particularity not only the "'who,' 'what,' 'where,' 'when,' and 'how' of

improper practices," but also "the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent

submissions to the government." *Corsello*, 428 F.3d at 1014.  In *Clausen*, for example, the

relator provided more information than Relators supply here, including the initials of patients,

dates of treatment, identification of claim forms, and CPT codes used on the claim forms

submitted to the government.  *Clausen*, 290 F.3d at 1316.  Nonetheless, the Eleventh Circuit

affirmed the dismissal because "no copies of a single actual bill or claim or payment were

provided" and relator failed to identify the dates or amounts of fraudulent claims.  *Id.* at 1306,

1311.  Likewise, in *Atkins*, the Eleventh Circuit affirmed the trial court's dismissal, because

while the relator cited "particular patients, dates and corresponding medical records," he failed to

---

[1]    Relators' claims are also subject to dismissal under Rule 12(b)(6), which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Although Rule 12(b)(6) requires the Court to accept factual allegations as true for purposes of a motion to dismiss, the "Court need not accept ... conclusory allegations, unwarranted deductions, or mere legal conclusions." *U.S. ex rel. Carroll v. JFK Med. Ctr.*, No. 01-8158-CIV, 2002 WL 31941007, at *2 (S.D. Fla. Nov. 15, 2002); *Dhillon v. Zions First Nat'l Bank*, 462 F. App'x 880, 883 (11th Cir. 2010) (same).

4

plead details of specific claims actually submitted to the government.  470 F.3d at 1359.  "The

particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process

without identifying a single claim."  *Id.* (quoting *U.S. v. Lab. Corp. of Am.*, No.

Civ.A.1:97CV2200 TWT,  2001 WL 1867721, at *1 (N.D. Ga. May 16, 2001)).  A relator's

failure to plead any actual claims submitted to the government for payment requires dismissal of

an FCA complaint.  *See, e.g., Clausen*, 290 F.3d at 1315; *Hopper v. Solvay Pharmaceuticals,*

*Inc.*, 588 F.3d 1318, 1325-26 (11th Cir. 2009); *U.S. ex rel. Klusmeier v. Bell Constructors, Inc.,*

469 Fed. Appx. 718, 721 (11th Cir. 2012).

Relators do not identify with particularity a single false claim actually submitted to

Medicare or any other federally-funded health care program for payment.  Instead, all Relators

can muster are wholly conclusory allegations that "Defendants" (group-pleaded together, which

is also forbidden by Rule 9(b)) "submitted claims to Medicare and other government programs,"

AC ¶ 12, which Relators guess must number in the "hundreds, and more likely thousands." AC ¶

88.  Relators allege that "providers, *like* Defendants" (AC ¶ 54) "*typically*" submit claims

sometime between "a few business days" and "120 days" after services are provided.  AC ¶ 73.[2]

Such bare bones allegations amount to nothing more than that claims "must have been submitted,

were likely submitted, or should have been submitted," allegations that the Eleventh Circuit

explicitly held to be insufficient in *Clausen*.  290 F.3d at 1311.  Just as the relator's claims in

*Britton* were held by the Eleventh Circuit to be properly dismissed with prejudice where the

relator asserted that he could file suit under the FCA "to the extent" Medicaid was billed,

Relators in this case offer the similar tautology that Defendants submit claims to the government

---

[2]        Except as otherwise noted, all emphasis in this memorandum is supplied.

for all services "that are provided to patients who are beneficiaries" of government health care programs.  AC ¶ 74.

Relators' own allegations make clear that Relators have no knowledge of what if any claims for payment were actually submitted, by whom they were submitted, or to whom they were submitted, much less for what, on what dates, or in what amounts.  Relators allege generically (and hyperbolically) that the government paid "millions, and potentially tens of millions" in false claims, because Relators have no idea what if any claims were submitted, much less in what amounts.  AC ¶ 13.  Moreover, Relators do not know who paid for the services, instead alleging "health care fraud involving both government and private insurance" (which is not actionable under the FCA), allegedly relating to services provided to beneficiaries of "Medicare, Medicaid, *or* TRICARE/CHAMPUS."  AC ¶¶ 23, 68.  Specifying which government program allegedly paid claims is important to the Baptist Defendants in this case, as hospitals only certify medical necessity "[f]or TRICARE Purposes" or "[f]or CHAMPUS purposes," not for Medicare or Medicaid purposes, on the Form UB-4 or Form UB-92 that Relators allege "a hospital" submits (AC ¶¶ 48, 72-73).  *See* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1104CP.pdf, at p. 15.

The patient "examples" cited by Relators are likewise devoid of any allegations as to claims being submitted, much less for what, on what dates, or in what amounts.  AC ¶¶ 105-111.  Only one of these examples even mentions a government payor, AC ¶ 107, and that statement is wholly conclusory, only alleging that "Dr. DYLEWSKI submitted bills to Medicare."  *Id.*; *see also* AC ¶ 112 (alleging that a "high percentage" of "Dr. DYLEWSKI's patients" were beneficiaries of government health programs).  Nor does Relators' quoting of language from Medicare forms (AC ¶¶ 53, 56-57, 73) save their Amended Complaint.  *See, e.g., Clausen*, 290

6

F.3d at 1311-13 (holding that attaching a blank Medicare form was not sufficient to satisfy Rule 9(b)). In addition, Relators do not identify who submitted claims with specificity, instead alleging that the Baptist Defendants "*and/or*" Dylewski submitted claims, AC ¶ 90, that "Defendants" submitted claims, *id.* ¶ 99, or that providers "like Defendants" submit claims. *Id.* ¶ 68. As discussed below at Section I.C.1., this type of group pleading does not satisfy Rule 9(b).

Relators do not even come close to pleading what was missing in *Clausen, Corsello, Britton, Atkins* or the myriad other Eleventh Circuit cases affirming grants of motions to dismiss FCA complaints on this basis. Eleventh Circuit precedent is clear that relators must identify with particularity an actual claim that was actually submitted to the government for payment, or dismissal is required. Because Relators have not done so, they cannot satisfy Rule 9(b), and dismissal of all counts is required on this basis alone.[3]

Specifically, without the pleading of a false claim, Count I alleging false claims under 31 U.S.C. § 3729(a)(1)(A) must be dismissed. *Clausen*, 290 F.3d at 1312.[4] Count II under 31 U.S.C. § 3729(a)(1)(B) likewise depends on Relators identifying a specific "false or fraudulent claim" (AC ¶ 123) to which a false record or statement was material, so Count II must be

---

[3]     Relators cannot avail themselves of the lone exception to the requirement to identify specific actual claims set forth in *U.S. ex rel. Mastej v. Health Management Associates, Inc.*, 591 F. App'x 693, 704-05 (11th Cir. 2014), for two reasons. First, Relators do not claim to have, nor could they claim to have, the personal knowledge of Medicare billing that the relator in *Mastej* had by virtue of being "in the very meetings where Medicare patients and the submission of claims to Medicare were discussed," among other "direct information" that relator had about Medicare claims submitted by the defendants in that case. *Id.* at 708. Second, "[c]ritical" to this exception in *Mastej* was "the fact that the type of fraud alleged" in that case, Anti-Kickback Statute violations, "does not depend as much on the particularized medical or billing content of any given claim form," *unlike* claims "for medical services that were unnecessary" as in *Clausen, Corsello,* and *Atkins, id.*, and as alleged in this case.

[4]     These sections of the FCA were amended and renumbered in 2009 by the Fraud Enforcement and Recovery Act ("FERA"). Relators' allegations from "at least 2007" to the present, AC ¶ 1, span both pre- and post-FERA versions of the statute. The FERA amendments are immaterial to this motion, because both versions of the FCA require relators to specifically identify an actual "claim," falsity, and the other required pleading noted herein.

dismissed for the same reason.  *See, e.g.*, *U.S. ex rel. Westfall v. Axiom Worldwide, Inc.*, No. 8:06-cv-571-T-33TBM, 2009 WL 1424213, *4-5 (M.D. Fla. May 20, 2009) (dismissing false statements cause of action for lack of particularity under "same analysis" applied to false claims cause of action).  Relators' Count III, a "reverse" false claims cause of action alleging failure to return overpayments under 31 U.S.C. § 3729(a)(1)(G), also must be dismissed for failure to plead any false claims with specificity because, according to the Amended Complaint, the basis for this cause of action is Defendants' alleged failure to make the "required refunds to the federal government *for these false claims*."  AC ¶ 9.  *See, e.g.*, *U.S. ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, No. 3:12-CV000764, 2015 U.S. Dist. LEXIS 150468, at *67-68 (M.D. Tenn. Nov. 5, 2015) (where allegations that defendant made false claims were dismissed on 9(b) grounds, reverse false claims allegations alleging improper retention of payments received as a result of those same false claims also failed); *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1317, 1329 (N.D. Ga. 2013) (where false claims counts and reverse false claims counts are "two sides of the same coin," the same analysis applies to both).

Finally, Count IV fails not only because there is no private cause of action for Stark Law violations as discussed in more detail below in Section VI, but also because Relators' failure to identify any actual false claims dooms any FCA allegations based on alleged Stark violations. *See, e.g.*, *U.S. ex rel. Wilson v. Crestwood Healthcare, L.P.*, No. CV-11-S-3361-NE, 2012 U.S. Dist. LEXIS 69763, at *22-23 (N.D. Ala. May 18, 2012) (dismissing FCA complaint based on alleged Stark violations for failure to plead claims with specificity); *U.S. ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10 C 368, 2014 U.S. Dist. LEXIS 98429, at *17-20 (N.D. Ill. July 18, 2014) (dismissing complaint, including allegations of improper Stark compliance certifications,

for failure to plead claims with particularity).[5]  All counts of Relators' Amended Complaint therefore should be dismissed for failure to identify with particularity false claims actually submitted to the government by the Baptist Defendants.

**B.      Relators Fail to Plead False Certifications By the Baptist Defendants.**

Although Relators' entire Amended Complaint should be dismissed for failure to identify with particularity actual claims submitted to the government, a second, independent reason for dismissal is that Relators fail to plead, with particularity or otherwise, that the Baptist Defendants falsely certified their compliance with medical necessity requirements.  Relators allege that "[v]arious claims forms" require certification of medical necessity.  AC ¶ 60.  But when Relators attempt to describe what was actually certified, they allege certification in a hospital cost report of general compliance with "laws and regulations," not medical necessity (AC ¶ 53), allege that "a hospital" submits a UB-4 or UB-92 form (AC ¶ 48), which does not certify medical necessity for Medicare or Medicaid purposes, and allege that "the physician" certifies medical necessity in a CMS 1500 claim form.  AC ¶ 56; AC ¶ 73 (alleging typical submission of "a CMS 1500 for the physician services").  Therefore, Relators (1) fail to specify the details of any actual false certification by any particular Baptist Defendant, (2) fail to identify any form on which the Baptist Defendants certified medical necessity as to Medicare or Medicaid, and (3) do not plead that any Baptist Defendant certified Dr. Dylewski's compliance with necessity requirements.

First, Relators' allegations that "Dr. Dylewski *and/or* the Baptist Defendants" completed "various claim forms" that are "typically" submitted (AC ¶¶ 60, 73, 90) do not satisfy Rule 9(b).  *See, e.g.*, *U.S. ex rel. Barrett v. Beauty Basics, Inc.*, 2:13-CV-1989-SLB, 2015 U.S. Dist. LEXIS 75629, at *7-8 (N.D. Ala. June 11, 2015).  Relators fail to plead with specificity any actual form

---

[5]      Another basis for dismissal of any Stark-related claim here is that, as in *Dolan*, Relators fail "to identify any patients allegedly referred in violation of the Stark law." *Id.* at *16-17.

containing a false certification that was submitted to the government by any of the Baptist

Defendants, including dates, signers, or contents of the submission.  This alone warrants

dismissal of Relators' FCA claims.

Second, Relators have not identified any certifications of medical necessity by the Baptist

Defendants.  Certifications on hospital cost reports do not refer to medical necessity; instead, as

alleged in the Amended Complaint, they state generically that a hospital provides services in

compliance with "laws and regulations regarding the provision of the health care services."  AC

¶ 53.  Such a certification on a hospital cost report does not create FCA liability for a hospital's

breach of any and all laws and regulations.  *See, e.g.*, *U.S. ex rel. Conner v. Salina Reg'l Health

Ctr., Inc.*, 543 F.3d 1211, 1218-20 (10th Cir. 2008) (certifications in cost reports of compliance

with all laws and regulations is "general sweeping language" and does not "condition the

government's *payment* on perfect compliance with underlying statutes and regulations").

Indeed, Relators allege certifications of "conditions of *participation*" (AC ¶ 12), but only false

certifications of conditions of *payment* can trigger FCA liability.  *See, e.g.*, *Conner*, 543 F.3d at

1220.  Also, hospitals only certify medical necessity "[f]or TRICARE Purposes" or "[f]or

CHAMPUS purposes," not Medicare or Medicaid purposes, on the Forms UB-4 or UB-92 that

Relators allege "a hospital" submits (AC ¶¶ 48, 72-73).  *See* http://www.cms.gov/Regulations-

and-Guidance/Guidance/Transmittals/Downloads/ R1104CP.pdf, at p. 15.

Third, Relators do not allege that the Baptist Defendants certified Dr. Dylewski's

compliance with medical necessity requirements, much less that the Baptist Defendants did so

falsely, which is another ground for dismissal.  *U.S. ex rel. Thomas v. Bailey*, No.

4:06CV00465 JLH, 2008 U.S. Dist. LEXIS 91221, at *34 (E.D. Ark. Nov. 6, 2008)

(dismissing claims as to hospitals because certifications by hospitals that *the hospitals*

10

complied are not certifications that the *physicians* performing the services were in compliance) (superseded by statute on other grounds); *Maa v. Ostroff*, No. 12-cv-00200-JCS, 2013 U.S. Dist. LEXIS 57433, at *46 (N.D. Cal. Apr. 19, 2013) (dismissing claims against physician because relator did not plead that the physician himself made any certifications).

### C.   Relators Do Not Plead the Required "Who, What, Where, When, and How" as to Any Improper Practices by the Baptist Defendants.

To satisfy Rule 9(b), a relator must allege with particularity facts showing an "indicia of reliability" both as to the "'who,' 'what,' 'where,' 'when,' and 'how' of improper practices," and "the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." *Corsello*, 428 F.3d at 1013-14. Relators must identify "the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *Britton*, 2015 U.S. App. LEXIS 21373, at *5. Relators do not plead the specifics of alleged fraudulent acts by the Baptist Defendants with the particularity required by Rule 9(b).

### 1.   Rule 9(b) Does Not Permit Group Pleading Against "Defendants."

To satisfy Rule 9(b), Relators cannot lump multiple defendants together in allegations of fraud. *See, e.g., U.S. v. Gericare Med. Supply, Inc.*, No. 99-0366-CB-L, 2000 U.S. Dist. LEXIS 19661, at *24 (S.D. Ala. Dec. 11, 2000) (A "complaint must satisfy Rule 9(b) with respect to each defendant."); *U.S. ex rel. Graves v. Plaza Med. Ctrs. Corp.,* 10-23382-CIV-MORENO, 2014 U.S. Dist. LEXIS 143269, at *7-9 (S.D. Fla. Oct. 7, 2014) (dismissing complaint where relator failed to describe the role of *each* defendant in the alleged fraud and instead made allegations against "Defendants" collectively) (citing *Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997)); *U.S. ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011). Relator must "inform each defendant separately of the allegations

11

surrounding [the defendant's] participation in the fraud." *Lee*, 655 F.3d at 997-98.  A relator

must "at a minimum identify the role of each defendant in the alleged fraudulent scheme." *Id.*

In this case, Relators assert allegations against "Defendants" generally (*e.g.*, AC ¶¶ 1, 11,

99), against "Baptist Health, Baptist Hospital, and SMH" (*e.g.*, AC ¶¶ 35, 88), or against Baptist

Health, Baptist Hospital, "and/or" SMH (*e.g.*, AC ¶¶ 40, 115).  Regardless of whether the group

pleading groups together only the Baptist Defendants or both the Baptist Defendants and Dr.

Dylewski, such group pleading does not satisfy Rule 9(b).  *See, e.g.*, *Lee*, 655 F.3d at 997-98;

*Graves*, 2014 U.S. Dist. LEXIS 143269, at *8-9.  Moreover, Relators are required to identify

individual employees with requisite knowledge, which they have not done.  *See, e.g.*, *U.S. ex rel.*

*Conteh v. IKON Office Solutions, Inc.*, 27 F. Supp. 3d 80, 88-99 (D.D.C. 2014) (citing *U.S. v.*

*Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010)).  This is yet another

independent reason why this Court should dismiss all claims against the Baptist Defendants.

> **2.      Relators Also Do Not Adequately Plead the When, Where, How and Why of Any Fraud by the Baptist Defendants, As Rule 9(b) Requires.**

Relators do not allege any of the dates on which allegedly improper medical procedures

occurred.  *See, e.g.*, *U.S. ex rel. Barmak v. Sutter Corp.*, No. 95 CV 7637(KTD)(RLE), 2002

U.S. Dist. LEXIS 8509, at *14 (S.D.N.Y. May 13, 2002) (noting that to satisfy Rule 9(b), "[a]t a

minimum, this means the relevant dates of the alleged fraud must be articulated").  Instead,

Relators assert only that the practices they allege in their Amended Complaint have been

occurring "since at least 2007" and "as recently as May 2014," without indicating when in this

seven-year time period any alleged improper activity occurred.  AC ¶¶ 1, 105.  This does not

satisfy Rule 9(b).  *See, e.g.*, *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 234

(1st Cir. 2004) (a range of four years did not sufficiently plead when false claims occurred as

required by Rule 9(b)).

The seven patient "examples" at paragraphs 105 through 111 of the Amended Complaint are not pleaded with particularity, either.  In addition to failing to identify dates of treatment or dates claims were submitted, Relators do not identify patients who allegedly received unnecessary treatment with any specificity that would enable the Baptist Defendants to identify them, such as by patient initials or account numbers.  For most examples, Relators do not even allege the locations at which the patients were allegedly treated, whether at Dr. Dylewski's office where Relator Davenport worked (AC ¶ 5) or some other location.  Relators also fail to plead with particularity how or why the procedures were unnecessary.  *Maa*, 2013 U.S. Dist. LEXIS 57433, at *59 (holding that failure to plead "*why* any one procedure was unnecessary … [does] not meet the heightened pleading standards for an FCA claim") (emphasis in original).

Relators' failure to identify any specific dates, patients, or locations makes it difficult for the Baptist Defendants to determine which patients supposedly received unnecessary treatment or what if any claims were allegedly inappropriate.  This is exactly what Rule 9(b) is intended to prevent.  *See U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (to satisfy Rule 9(b), a relator must plead enough detail that a defendant can "defend against the charge and not just deny that they have done anything wrong").

## II.   RELATORS' ALLEGATIONS OF "SUBOPTIMAL" OR "IMPROPERLY PERFORMED" PROCEDURES ARE NOT ACTIONABLE UNDER THE FCA, AS THE FCA IS NOT A FEDERAL MEDICAL MALPRACTICE STATUTE.

Relators' Amended Complaint contains a number of allegations of "suboptimal" procedures that were allegedly "improperly performed" or "were incompatible with standards of accepted medical practice."  *See, e.g.*, AC ¶¶ 6, 12, 75, 93, 99, 112.  For example, Relators complain of Dr. Dylewski's use of "excessive amounts of iodinated contrast," "improper lead placement," and other allegedly substandard care.  AC ¶¶ 106-07, 109-110.  Relators appear to

13

be attempting to assert a claim for implied false certification of quality of care, but any such legal theory under the FCA fails as a matter of law.

First, the Eleventh Circuit has declined to express an opinion on whether implied certification is viable at all under the FCA, *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 808 n.1 (11th Cir. 2015), an issue currently pending before the Supreme Court. *Universal Health Servs. v. U.S. ex rel. Escobar*, 136 S. Ct. 582 (cert. granted Dec. 4, 2015). Second, implied false certification, even if viable in some circumstances, does not encompass FCA suits based on allegations that defendants' quality of care did not meet medical standards of care. *See, e.g.*, *U.S. ex rel. Mikes v. Straus*, 274 F.3d 687, 699-700 (2d Cir. 2001). Allowing FCA claims based on such allegations "would promote federalization of medical malpractice," which is not what the FCA was designed to do. *Id.* at 700. The FCA's reach therefore does not extend to claims of medical malpractice. *Id.*; *U.S. ex rel. Phillips v. Permian Residential Care Ctr.*, 386 F. Supp. 2d 879, 884 (W.D. Tex. 2005) ("[C]ourts have limited the False Claims Act from becoming a federal malpractice statute."). Third, Relators do not allege at all, much less with particularity, that the Baptist Defendants certified that the quality of care provided would always meet standards of care. *See, e.g.*, *U.S. ex rel. Blundell v. Dialysis Clinic, Inc*, No. 5:09-CV-00710 (NAM/DEP), 2011 U.S. Dist. LEXIS 4862, at *56-60 (N.D.N.Y. Jan 19, 2011) (dismissing implied false certification claims alleging poor quality of care). Relators' claims regarding allegedly suboptimal or improperly performed procedures should be dismissed.

## III.   RELATORS' COUNT III FOR REVERSE FALSE CLAIMS SHOULD BE DISMISSED AS REDUNDANT OF THEIR FALSE CLAIMS ALLEGATIONS.

Relators' reverse false claims allegations in Count III are simply the mirror-image of their affirmative false claims counts. Relators allege that the Defendants violated Sections 3729(a)(1)(A) and (B) of the FCA by submitting false claims for payment and violated Section

14

3729(a)(1)(G) by failing to refund those same allegedly improper payments.  Relators are attempting to assert two alternative theories of recovery for the same conduct—a false claims allegation for improperly obtaining reimbursement and a reverse false claims allegation for not refunding those same reimbursements—which is not permitted.

Count III therefore should be dismissed as redundant, because the FCA's reverse false claims provision is not simply another avenue to state allegations already covered by the statute's false claims and false statement provisions.  *See U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 514-15 (E.D. Pa. 2010) (dismissing "redundant" reverse false claims allegations; the reverse FCA's "purpose was not to provide a redundant basis to state a false statement claim under subsection (a)(2)"); *U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 338-39 (S.D.N.Y. 2004) (relator was not allowed to plead both false claims and reverse false claims; the money allegedly owed under the reverse FCA was the same money already alleged to have been improperly obtained).  Relators' reverse false claims count amounts to nothing more than the mirror-image of their other FCA counts. Count III should be dismissed in its entirety.

## IV.  RELATORS DO NOT PLEAD VEIL-PIERCING OR DIRECT PARTICIPATION IN SUBMISSION OF FALSE CLAIMS AS NECESSARY TO STATE ANY CLAIM AGAINST PARENT CORPORATION BAPTIST HEALTH.

Relators do not state a claim for which relief can be granted against Baptist Health, which is the corporate parent of Baptist Hospital and SMH.  AC ¶¶ 29-31.  Relators do not assert any claims separately against Baptist Health, only lumping it together with Baptist Hospital and SMH, *see, e.g.*, AC ¶¶ 35, 55, 115, which alone requires dismissal.  *See, e.g., In re Pharm. Indus. Avg. Wholesale Price Litig.*, 538 F. Supp. 2d 367, 391 (D. Mass. 2008) (dismissing action against corporate parent where complaint contained no specific allegations against it); *U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods., Inc.*, No. 12-cv-0602-L (NLS), 2013 U.S.

15

Dist. LEXIS 27913, at *13-14 (S.D. Cal. Feb. 28, 2013) (dismissing complaint that did not

differentiate between parent and subsidiary). To state an FCA claim against a parent or related

company, the related company must either be "directly liable for its own role in the submission

of false claims" or "liable under a veil piercing or alter ego theory." *U.S. ex rel. Pfeifer v. ELA

Med., Inc.*, No. 07-cv-1460-WDM-MEH, 2010 U.S. Dist. LEXIS 45656, at *39 (D. Colo. Mar.

31, 2010); *see also U.S. ex rel. Heesch v. Diagnostic Physicians Grp., P.C.,* No. 11-000364-KD-

B, 2014 U.S. Dist. LEXIS 71170, at *22 (S.D. Ala. Apr. 11, 2014). Relators have not pled

either, so all claims against Baptist Health should be dismissed.

> **A.** **Relators Do Not Sufficiently Plead Direct Liability of Baptist Health for Its
> Own Role in the Submission of False Claims.**

Baptist Health is not alleged to have engaged directly in the submission of any false

claims. "[B]eing a parent corporation of a subsidiary that commits an FCA violation, without

some degree of participation by the parent … is not enough to support a claim against the parent

for the subsidiary's FCA violation." *U.S. ex rel. Holbrook v. The Brink's Co.*, 2:13-CV-873,

2015 U.S. Dist. LEXIS 4951, at *64 (S.D. Ohio Jan. 15, 2015). In a recent case from the

Southern District of Georgia, both a parent company and a hospital it operated were sued under

the FCA based on the hospital's alleged false certifications in annual cost reports. *U.S. ex rel.

Schaengold v. Mem'l Health, Inc.*, 4:11-cv-58, 2014 U.S. Dist. LEXIS 169555, at *4, *9-10

(S.D. Ga. Dec. 8, 2014). The court dismissed all counts as to the parent because only the

hospital, not the parent, was alleged to have submitted false certifications. *Id.* at *25-26; *see also

Heesch*, 2014 U.S. Dist. LEXIS 71170, at *20-22.

In this case, similarly, Relators do not allege that Baptist Health submitted any claims for

payment or any certifications. Moreover, Relators do not allege that Baptist Health had any

input into any claims, cost reports, or other forms submitted by anyone else. Relators do not

allege any specific conduct by Baptist Health to support that Baptist Health is directly liable for its own role in submitting or causing claims to be submitted to the government, and this failure requires dismissal. *See, e.g.*, *Heesch,* 2014 U.S. Dist. LEXIS 71170, at *20-22.

**B.      Relators Have Not Pleaded Veil-Piercing Against Baptist Health, Either.**

Relators' Amended Complaint does not even mention veil-piercing or other theories of indirect liability, much less facts to support such a theory. "[E]xcept in unusual circumstances, courts will not disregard the separate [corporate] identities." *Pfeifer,* 2010 U.S. Dist. LEXIS 45656, at *39 (citation omitted).[6] Courts require two elements to be pleaded to disregard corporate form and impute the behavior of one entity to another. First, courts examine "whether there was such a unity of interest and ownership that the separate personalities of the [related entities] no longer existed." *U.S. v. Universal Health Servs.*, No. 1:07CV00054, 2010 U.S. Dist. LEXIS 116432, at *9 (W.D. Va. Oct. 31, 2010). Second, courts ask "whether respecting the corporate form would produce an inequitable result." *Id.* "If both elements are met, the [related company] is deemed to be the [other's] alter ego, agent, or mere instrumentality." *Id.* at *10.

Application of this first element requires evaluating "the degree to which formalities have been followed to maintain a separate corporate identity." *Schaengold*, 2014 U.S. Dist. LEXIS 169555, at *29. Factors that may evidence a lack of separate existence between corporate entities are the "commonality of officers and directors; an improper financial relationship between the [entities]; failure to maintain separate books, records, and offices; or that the property used by one is used by the other as its own." *Pfeifer*, 2010 U.S. Dist. LEXIS 45656, at *40. Here, Relators do not assert a single allegation regarding any of these factors. Instead, they allege only that Baptist Health is an operating company that "perform[s] the functions" of and

---

[6]      Federal law controls the veil-piercing question in FCA cases. *See Schaengold*, 2014 U.S. Dist. LEXIS 169555, at *27.

17

"carr[ies] out the purposes of" Baptist Hospital and SMH.  AC ¶ 31.  This is not sufficient.  *See,
e.g.*, *Schaengold*, 2014 U.S. Dist. LEXIS 169555, at *29 (allegations of operation of a "unitary
health system" and overlapping senior management are not sufficient to pierce the corporate
veil).  In addition, allegations that Baptist Health personnel had knowledge of fraud resulting in
false claims does not suffice to pierce the corporate veil to state a claim against Baptist Health.
*Heesch*, 2014 U.S. Dist. LEXIS 71170, at *22 (refusing to pierce the corporate veil where parent
and subsidiary shared some offices, executives, and employees, some of whom were alleged to
have had knowledge of the arrangement that resulted in false claims).

      Nor can Relators satisfy the second element, that an inequitable result would follow
should the corporate entities be respected as separate, which is necessary to satisfy veil-piercing.
*See Universal Health Servs.*, 2010 U.S. Dist. LEXIS 116432, at *12-13.  Where, as here,
Relators "fail[] to plausibly plead that the [parent] and its subsidiaries abused the corporate form,
the allegations regarding [the parent's] knowledge of fraud are…insufficient" to survive a
motion to dismiss.  *Id.* at *13.  Because Relators fail to sufficiently allege veil-piercing or direct
liability of Baptist Health for its own role in the submission of false claims, all claims against
Baptist Health should be dismissed.

## V.   THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE STARK LAW, WHICH IS ANOTHER REASON COUNT IV MUST BE DISMISSED.

      In addition to the other grounds for dismissal set forth above, Count IV of the Amended
Complaint must be dismissed because the Stark Law does not create a private right of action.
*See, e.g.*, *Ameritox, Ltd. v. Millennium Labs. Inc.*, 803 F.3d 518, 525 (11th Cir. 2015); *Dolan*,
2014 U.S. Dist. LEXIS 98429, at *12.  In Count IV of the Amended Complaint, Relators assert
just such a private right of action, purporting to state a "claim for refunds and civil penalties
under the Stark Law, 42 U.S.C. § 1359nn" (sic – presumably Relators meant 42 U.S.C. §

18

1395nn).  AC ¶ 130.  Such stand-alone private actions are not permitted under the Stark Law,

which is another reason Count IV must be dismissed.

## VI.   THE FCA'S STATUTE OF LIMITATIONS BARS ALL MEDICAL NECESSITY CLAIMS BEFORE JUNE 5, 2008 AND ALL STARK-RELATED CLAIMS BEFORE JANUARY 27, 2009.

The FCA's statute of limitations is six years.  31 U.S.C. § 3731(b)(1).  Relators filed

their initial complaint, containing medical necessity FCA claims but not Stark claims, on June 5,

2014.  (Dkt. 1.)  Therefore, the FCA's statute of limitations bars Relators' action as to any

medical necessity claims prior to June 5, 2008.  In particular, although Relator Davenport alleges

that he "witnessed the Medicare fraud and Defendants' predatory surgical practices during his

employment at Defendant, JOHN R. DYLEWSKI, M.D.'s medical office during 2006 to 2007,"

AC ¶ 5, he waited for more than six years, until 2014, to bring an action under the FCA.  All

such claims predate June 5, 2008, and they should therefore be dismissed with prejudice, as

should all other medical necessity claims pre-dating June 5, 2008.  *See, e.g., U.S. ex rel. Olsen v.

Lockheed Martin Corp.*, 1:09-CV-3083-JEC, 2010 U.S. Dist. LEXIS 145114, at *15-16 (N.D.

Ga. Sept. 17, 2010) (dismissing complaint on statute of limitations grounds where "most detailed

allegations involve misrepresentations…that relator allegedly witnessed…between September

1995 and July 1999" but Relator did not file his complaint until 2007).[7]

Also, Relators' FCA claims based on Stark Law violations as alleged in Count IV, to the

extent not dismissed on the other grounds set forth in this memorandum, should be limited to

claims submitted on or after January 27, 2009, six years after Relators first raised this claim in

their Amended Complaint filed on January 27, 2015.  (Dkt. 16.)  "[C]ourts have declined to

---

[7]     Dismissal on statute of limitations grounds is properly addressed on a motion to dismiss here, since the deficiency is plain on the face of the complaint. *See, e.g., Foster v. Savannah Commc'n*, 140 F. App'x 905, 907 (11th Cir. 2005).

19

apply the relation back doctrine to allow the addition of new claims for relief based on transactions or events not included in the original pleading." *Grace v. Rosenstock*, 169 F.R.D. 473, 481 (E.D.N.Y. 1996), *aff'd*, 228 F.3d 40 (2d Cir. 2000). Relators' Stark Law allegations appear for the first time in the Amended Complaint and therefore do not relate back to the original complaint. *See Cent. Hudson Gas & Elec. Corp. v. Combustion Eng'g. Inc.*, No. 86 Civ. 3061 (WCC), 1989 U.S. Dist. LEXIS 8509, at *11 (S.D.N.Y. July 26, 1989) (refusing to allow relation back where "the claims asserted in the Amended Complaint arise out of an agreement distinct from that which was the basis for the causes alleged in the Original Complaint"). Therefore, all Stark-related claims prior to January 27, 2009 are time-barred.

## CONCLUSION

For the reasons stated above, the Baptist Defendants respectfully request that this Court grant their motion to dismiss Relators' Amended Complaint.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the Baptist Defendants respectfully request that oral argument be held on their Motion to Dismiss Relators' Amended Complaint. The Baptist Defendants believe that, given the multiple legal issues raised in their Motion, the Court's decision-making process would be aided by oral argument, particularly if the Court has any questions for counsel based on its review of the briefing. One hour should be an appropriate amount of time in which to address the issues raised in the Baptist Defendants' Motion.

Dated: March 25, 2016

Respectfully submitted,

FOLEY & LARDNER LLP
**Michael P. Matthews**
Florida Bar No. 63988
mmatthews@foley.com
Foley & Lardner LLP

20

100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
Telephone:  (813) 225-4131
Facsimile:  (813) 221-4210

**Angelica L. Boutwell**
Florida Bar No. 105069
aboutwell@foley.com
One Biscayne Tower
2 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
Telephone:  (305) 482-8400
Facsimile:   (305) 482-8600


By:  _/s/ Michael P. Matthews_
        Michael P. Matthews


*Counsel for Defendants Baptist Health*
*South Florida, Inc. d/b/a Baptist Health*
*South Florida, and d/b/a Miami Cardiac &*
*Vascular Institute; Baptist Hospital of*
*Miami, Inc.; and South Miami Hospital,*
*Inc., d/b/a South Miami Heart Center*

21

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 25, 2016 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel listed on the attached Service List.

*/s/ Michael P. Matthews*

Michael Matthews

4816-7259-1407.2

<u>SERVICE LIST</u>
Burks, et al. vs. Dylewski, et al.
<u>Case No. 1:14-cv-22079 –Ungaro/Otazo-Ryes</u>

**Attorneys for Baptist Defendants**

Michael P. Matthews
mmatthews@foley.com
Foley & Lardner LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
Telephone:  (813) 225-4131
Facsimile:  (813) 221-4210

Angelica L. Boutwell
aboutwell@foley.com
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone:  (305) 482-8400
Facsimile:   (305) 482-8600

**Attorneys for Relators:**

Tod Aronovitz
ta@aronovitzlaw.com
Barbara Perez
bp@aronovitzlaw.com
ARONOVITZ LAW
One Biscayne Tower
Suite 3700
2 South Biscayne Boulevard
Miami, FL 33131
(305) 372-2772 Telephone
(305) 397-1886 Facsimile

**Attorneys for Defendant Dr. John R. Dylewski, M.D.:**

Ronald Gainor
Amber Donner
gainorlaw@gmail.com
Gainor & Donner
3250 Mary Street, Suite 405
Miami, Florida 33131
(305) 537-2000 Telephone
(305) 537-2001 Facsimile

23

4816-7259-1407.2

**Attorneys for USA:**

John C. Spaccarotella
John.Spaccarotella@usdoj.gov
Assistant U.S. Attorney
Southern District of Florida
99 NE 4th Street, Third Floor Miami
Florida 33132
(305) 961-9212 Telephone

4816-7259-1407.2