UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:14-CV-22079 – UNGARO/OTAZO-REYES

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | ) |
| JAMES A. BURKS, M.D., and JAMES D. | ) |
| DAVENPORT, M.D., | ) |
| | ) |
|       Plaintiffs/Relators, | ) |
| | ) |
|    vs. | ) |
| | ) |
| JOHN R. DYLEWSKI, M.D., BAPTIST | ) |
| HEALTH SOUTH FLORIDA, INC. d/b/a | ) |
| BAPTIST HEALTH SOUTH FLORIDA, and | ) |
| d/b/a MIAMI CARDIAC & VASCULAR | ) |
| INSTITUTE; BAPTIST HOSPITAL OF | ) |
| MIAMI, INC.; and SOUTH MIAMI | ) |
| HOSPITAL, INC., d/b/a SOUTH MIAMI | ) |
| HEART CENTER, | ) |
| | ) |
|       Defendants. | ) |

**JOHN R. DYLEWSKI'S ANSWER TO RELATORS'
SECOND AMENDED COMPLAINT**

Defendant John R. Dylewski ("Dr. Dylewski") hereby answers the Second Amended

Complaint brought by Relators, James A. Burks, M.D. ("Burks") and James D. Davenport, M.D.

("Davenport") (collectively, "Relators") and responds to the allegations as follows:[1]

1.      The first sentence of Paragraph 1 is a legal conclusion to which no response is

required.  To the extent a response is required, Dr. Dylewski denies the allegations contained in

the first sentence of Paragraph 1.  Dr. Dylewski admits that Burks and Davenport are physicians

who served on various boards and committees but denies the allegations regarding character and

reputation.  Dr. Dylewski admits that Relators purport to bring this action to recover alleged

damages and civil penalties and assert claims under the False Claims Act (the "FCA").

---

[1] All headings, subheadings, or other statements in the Second Amended Complaint not
specifically admitted in this Answer are denied.

However, Dr. Dylewski denies that Relators have any valid claims against him, or that Relators are entitled to any relief.  To the extent not specifically denied herein, Dr. Dylewski denies the remaining allegations in Paragraph 1 of the Second Amended Complaint.

2.     Dr. Dylewski denies the allegations in Paragraph 2 of the Second Amended Complaint.

3.     The first sentence of Paragraph 3 contains legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations contained in the first sentence of Paragraph 3. Dr. Dylewski admits that before the statute of limitations bar date in this matter (as Relators acknowledge in footnote 4 of their Second Amended Complaint), L. Austin Weeks was a patient of Dr. Dylewski, that Mr. and Mrs. L. Austin Weeks pledged $10 million to the South Miami Hospital Foundation, and that Dr. Dylewski became the Founder, Developer and Medical Director of the cardiac electrophysiology program at South Miami Hospital for which he was reasonably compensated.  Dr. Dylewski denies the remainder of the allegations in Paragraph 3 of the Second Amended Complaint.

4.     Paragraph 4 consists of legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations contained in Paragraph 4 of the Second Amended Complaint.

5.     Dr. Dylewski admits that Relators purport to bring an action under the FCA, but Dr. Dylewski denies that Relators have any valid claims against him or that Relators are entitled to any relief.  Dr. Dylewski denies the remaining allegations in Paragraph 5 of the Second Amended Complaint.

6.     Dr. Dylewski admits that Davenport was employed by Arrhythmia Management Institute of South Florida before the statute of limitations bar date in this matter (as Relators

2

acknowledge in footnote 4 of their Second Amended Complaint), and was a member of the medical staff at Baptist Hospital and South Miami Hospital, that Burks was a member of the South Miami Heart Center Advisory Board, and that Burks served as Chief of the Cardiovascular Clinical Service Line at the South Miami Heart Center.  Dr. Dylewski denies the remaining allegations in Paragraph 6 of the Second Amended Complaint.

7.     Dr. Dylewski admits that the statute of limitations limits claims to conduct occurring on or after June 5, 2008.  Dr. Dylewski admits that he is not on the ECHO Readership Panel that reads transthoracic echocardiograms but that he is authorized and has privileges to and does perform and interpret transesophageal echocardiograms as well as echocardiographic cardiac device optimizations. Dr. Dylewski denies all other allegations Paragraph 7 of the Second Amended Complaint.

8.     Dr. Dylewski denies the allegations in Paragraph 8 of the Second Amended Complaint.

9.     Dr. Dylewski denies the allegations in Paragraph 9 of the Second Amended Complaint.

10.     Dr. Dylewski denies the allegations in Paragraph 10 of the Second Amended Complaint.

11.     Dr. Dylewski denies the allegations in Paragraph 11 of the Second Amended Complaint.

12.     Paragraph 12 contains legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 12 of the Second Amended Complaint, and therefore denies the same.

13.    Paragraph 13 contains legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 13 of the Second Amended Complaint.

14.    Paragraph 14 contains legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 14 of the Second Amended Complaint.

15.    Dr. Dylewski admits that Relators purport to bring an action to recover alleged damages and civil penalties under the FCA.  Dr. Dylewski denies that Relators have any valid claims as against him or that Relators are entitled to any of the requested relief.  Dr. Dylewski denies the remaining allegations in Paragraph 15 of the Second Amended Complaint.

16.    Dr. Dylewski admits that Relators purport to bring an action to recover alleged damages and civil penalties between $5,500 and $11,000 per claim under the FCA, 31 U.S.C. § 3729, *et. seq.*  However, Dr. Dylewski denies that Relators have any valid claims as against him or that Relators are entitled to any of the requested relief and denies the remaining allegations in Paragraph 16 of the Second Amended Complaint.

17.    Dr. Dylewski admits that the Court has subject-matter jurisdiction over this action, except to the extent that subject-matter jurisdiction may not exist pursuant to 31 U.S.C. § 3730(e)(3) or (4).

18.    Dr. Dylewski admits that this Court has personal jurisdiction over him, but denies committing acts proscribed by law and denies any remaining allegations in Paragraph 18 of the Second Amended Complaint.

19.    Dr. Dylewski admits that venue is proper within the Southern District of Florida, but denies the alleged acts and practices asserted in the Second Amended Complaint and denies any remaining allegations in Paragraph 19 of the Second Amended Complaint.

20.    The allegations in Paragraph 20 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 20 to the extent they are inconsistent with the text of the FCA and are incomplete recitations of the legal requirements to bring a claim under the FCA.

21.    Dr. Dylewski admits that Burks was a member of the medical staff at South Miami Hospital, was a member of various committees at South Miami Hospital, and was a vascular surgeon.  Dr. Dylewski otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 21 of the Second Amended Complaint, and therefore denies the same.

22.    Dylewski admits that Davenport was employed by Arrhythmia Management Institute of South Florida, was a board certified cardiologist and medical doctor licensed to practice in Florida, was a member of the medical staff at South Miami Hospital and was previously a member of various committees at South Miami Hospital.  Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 22 of the Second Amended Complaint, and therefore denies the same.

23.    Dr. Dylewski denies the allegations in Paragraph 23 of the Second Amended Complaint.

24.    Dr. Dylewski denies the allegations in Paragraph 24 to the extent the allegations in the Second Amended Complaint are based on information that Relators received from the federal government during its investigation or from other sources that are not based on Relators'

personal knowledge.  Dr. Dylewski otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 24 of the Second Amended Complaint, and therefore denies the same.

25.     Dr. Dylewski denies the allegations in Paragraph 25 to the extent the allegations in the Second Amended Complaint are based on information that Relators received from the federal government during its investigation or other public disclosures.  Dr. Dylewski otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 25 of the Second Amended Complaint, and therefore denies the same.

26.      Paragraph 26 states a legal conclusion to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 26 of the Second Amended Complaint.

27.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 27 of the Second Amended Complaint, and therefore denies the same.

28.     The allegations in Paragraph 28 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 28 of the Second Amended Complaint, and therefore denies the same.

29.     Dr. Dylewski admits that Baptist Health is a Florida not-for-profit corporation, with its headquarters located in Coral Gables, Florida, but lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 29 of the Second Amended Complaint, and therefore denies the same.

30.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 30 of the Second Amended Complaint, and therefore denies the same.

31.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 31 of the Second Amended Complaint, and therefore denies the same.

32.     Dr. Dylewski admits that Defendant Baptist Health is a Florida not-for-profit corporation with its headquarters located in Coral Gables, Florida, but lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 32 of the Second Amended Complaint, and therefore denies the same.

33.     Dr. Dylewski admits that South Miami Hospital is a Florida not-for-profit corporation with its headquarters located in South Miami, Florida but lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 33 of the Second Amended Complaint, and therefore denies the same.

34.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 34 of the Second Amended Complaint, and therefore denies the same.

35.     Paragraph 35 contains legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations contained in Paragraph 35 of the Second Amended Complaint.

36.     The allegations in Paragraph 36 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in

Paragraph 36 to the extent they are inconsistent with the text of the FCA and are incomplete recitations of the legal requirements to bring a claim under the FCA.

37.     The allegations in Paragraph 37 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 37 to the extent they are inconsistent with the text of the FCA and are incomplete recitations of the legal requirements to bring a claim under the FCA.

38.     The allegations in Paragraph 38 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 38 to the extent they are inconsistent with the text of the FCA and other legal citations in this paragraph and are incomplete recitations of the legal requirements to bring a claim under the FCA.

39.     The allegations in Paragraph 39 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 39 to the extent they are inconsistent with the text of the statutes referenced therein and are incomplete recitations of the law cited.

40.     To the extent the allegations in Paragraph 40 set forth legal conclusions, no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 40 to the extent they are inconsistent with the text of the statutes referenced therein and are incomplete recitations of the law cited and otherwise denies the remaining allegations in Paragraph 40 of the Second Amended Complaint.

41.     The allegations in Paragraph 41 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 41 to the extent they are inconsistent with the text of the statutes referenced therein

and are incomplete recitations of the law cited and of the legal requirements to bring a claim under the FCA.

42.     The allegations in Paragraph 42 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 42 to the extent they are inconsistent with the text of the statutes referenced therein and are incomplete recitations of the law cited.

43.     The allegations in Paragraph 43 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski admits that CMS administers the Medicare program, and denies the allegations in Paragraph 43 to the extent they are inconsistent with the laws, rules, and regulations governing the Medicare program and are incomplete recitations of the law cited.

44.     The allegations in Paragraph 44 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski admits that fiscal intermediaries generally contract to administer and pay Medicare claims with federal funds, but denies the allegations in to the extent they are inconsistent with the text of the laws referenced therein or the laws, rules, and regulations governing the Medicare program or are incomplete recitations of the law cited.

45.     The allegations in Paragraph 45 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations of Paragraph 45 to the extent they are inconsistent with the text of the laws referenced therein or the laws, rules, and regulations governing the Medicare program or are incomplete recitations of such law, and denies any remaining allegations in Paragraph 45 of the Second Amended Complaint.

46.     The allegations in Paragraph 46 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 46 to the extent they are inconsistent with the laws, rules, and regulations governing the Medicare program or are incomplete recitations of such law, and lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 46 of the Second Amended Complaint.

47.     Dr. Dylewski admits that fiscal intermediaries generally contract with the government to receive, administer, and pay Medicare claims.  Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 47 of the Second Amended Complaint, and therefore denies the same.

48.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 48 of the Second Amended Complaint, and therefore denies the same.

49.     The allegations in Paragraph 49 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 49 of the Second Amended Complaint to the extent they are inconsistent with the text of the regulation or statute referenced therein or the laws, rules, and regulations governing the Medicare program or are incomplete recitations of the law cited therein. Dr. Dylewski is without knowledge sufficient to form a belief as to what CMS requires of hospitals and what forms hospitals submit, and therefore denies the same.

50.     The allegations in Paragraph 50 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 50 to the extent they are inconsistent with the laws, rules, and regulations or are

incomplete recitations of the law cited therein governing the Medicare program.  Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 50 of the Second Amended Complaint, and therefore denies the same.

51.    The allegations in Paragraph 51 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 51 to the extent they are inconsistent with the text of the regulation or statute referenced therein or the laws, rules, and regulations or are incomplete recitations of the law cited therein governing the Medicare program. Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 51 of the Second Amended Complaint, and therefore denies the same.

52.    The allegations in Paragraph 52 contain legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 52 to the extent they are inconsistent with the laws, rules, and regulations governing the Medicare program.   Dr. Dylewski lacks information and knowledge sufficient to form a belief as to what is "generally known throughout the health care industry" or what the government relies on or believes the purpose of hospital cost reports are, and therefore denies all allegations to that effect.  Dr. Dylewski denies the remaining allegations in Paragraph 52 of the Second Amended Complaint.

53.    The allegations in Paragraph 53 set forth a legal conclusion to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 53 to the extent they are inconsistent with the text of the form referenced therein or of any applicable law, rule, regulation, or guidance, or reflect an incomplete recitation of such form.

54.     The allegations in Paragraph 54 contain legal conclusions to which no response is required. To the extent a response is required, Dr. Dylewski admits that under Medicare Part B physicians must enroll with Medicare to be eligible for payment of covered medical services, that physicians are authorized to bill Medicare for that treatment and that Dr. Dylewski derives a portion of his revenue from the Medicare program. Dr. Dylewski denies the remaining allegations in Paragraph 54 of the Second Amended Complaint.

55.     The allegations in Paragraph 55 set forth a legal conclusion to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 55 to the extent they are inconsistent with the form referenced therein, or of any other applicable law, rule, regulation, or guidance. Dr. Dylewski admits that to obtain reimbursement under certain circumstances, Dr. Dylewski, through a third party, completes and submits a HCFA 1500 form that contains information about patients, including diagnoses and services provided. Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 55 of the Second Amended Complaint, including what the government relies upon, and therefore denies the same.

56.     The allegations in Paragraph 56 set forth a legal conclusion to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 56 to the extent they are inconsistent with the form referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

57.     The allegations in Paragraph 57 set forth a legal conclusion to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 56 to the extent they are inconsistent with the form referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

58.     The allegations in Paragraph 58 set forth a legal conclusion to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 58 to the extent they are inconsistent with the text of the statute referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

59.     The allegations in Paragraph 59 set forth a legal conclusion to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 59 to the extent they are inconsistent with the form referenced therein, the text of the statute referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

60.     The allegations in Paragraph 60 set forth a legal conclusion to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 60 to the extent they are inconsistent with the forms referenced therein, the text of the statutes referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

61.     The allegation in Paragraph 61 sets forth a legal conclusion to which no response is required.  To the extent a response is required, Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 61 of the Second Amended Complaint, including who or what defines or believes what lack of medical necessity "is known as," and therefore denies the same.

62.     The allegations in Paragraph 62 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 62 to the extent they are inconsistent with the text of the statutes referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

63.     The allegations in Paragraph 63 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 63 to the extent they are inconsistent with the text of the statutes referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

64.     The allegations in Paragraph 64 sets forth a legal conclusion to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 64 to the extent they are inconsistent with the text of the statute referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

65.     The allegations in Paragraph 65 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 65 to the extent they are inconsistent with the regulations referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

66.     The allegations in Paragraph 66 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 66 to the extent they are inconsistent with the regulation referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

67.     The allegations in Paragraph 67 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 67 to the extent they are inconsistent with the regulation referenced therein, or of any other applicable law, rule, regulation, or guidance, or an incomplete recitation therein.

68.     Dr. Dylewski denies the allegation in Paragraph 68 that patients were subject to medically unnecessary procedures and lacks knowledge or information sufficient to form a belief

regarding the truth of the remaining allegations in Paragraph 68 of the Second Amended Complaint, and therefore denies the same.

69.     The allegations in Paragraph 69 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 69 to the extent they are inconsistent with the statutes referenced therein, or of any other applicable law, rule, regulation, or guidance related to the Medicaid program, or are an incomplete recitation thereof. Dr. Dylewski admits that Medicaid is a program of medical assistance for indigent individuals.

70.     The allegations in Paragraph 70 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 70 to the extent they are inconsistent with statutes referenced therein, or of any other applicable law, rule, regulation, or guidance related to the Tricare or Champus program, or are an incomplete recitation thereof.

71.     Dr. Dylewski admits that, in the course of billing Medicare for a procedure or service, the appropriate personnel typically assign a medical claim number. Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 71 of the Second Amended Complaint, and therefore denies the same.

72.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 72 of the Second Amended Complaint, and therefore denies the same.

73.     The allegations in Paragraph 73 contain legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 73 to the extent they are inconsistent with applicable CMS rules, regulations, or guidance. Dr.

15

Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 73 of the Second Amended Complaint, and therefore denies the same.

74.     Dr. Dylewski admits that claims to the appropriate federal health care programs are often submitted for services performed for patients who are beneficiaries of those programs, but denies that claims are submitted for every single good or service provided to every single beneficiary of a federally-funded health care program and lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 74 of the Second Amended Complaint.

75.     Dr. Dylewski denies any allegation of fraudulent conduct and otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 75 of the Second Amended Complaint, and therefore denies the same.

76.     Paragraph 76 contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski acknowledges the general accuracy of the allegations contained in Paragraph 76, but asserts that it is an incomplete recitation of the subject matter, and therefore denies the same.

77.     Paragraph 77 contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski acknowledges the general accuracy of the allegations contained in Paragraph 77, but asserts that it is an incomplete recitation of the subject matter, and therefore denies the same.

78.     Dr. Dylewski admits that he is not on the ECHO Readership Panel, whose members read transthoracic echocardiograms, but that he has received the necessary training and

thus is authorized and has privileges to, and does perform and interpret transesophageal echocardiograms as well as echocardiographic cardiac device optimizations. Dr. Dylewski denies all remaining allegations in Paragraph 78 of the Second Amended Complaint.

79.     This paragraph contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski acknowledges the general accuracy of the allegations contained in Paragraph 79, but asserts that it is an incomplete recitation of the subject matter, and therefore denies the same.

80.     This paragraph contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski acknowledges the general accuracy of the allegations contained in Paragraph 80, but asserts that it is an incomplete and simplistic recitation of the subject matter, and therefore denies the same.

81.     This paragraph contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski acknowledges the general accuracy of the allegations contained in Paragraph 81, but asserts that it is an incomplete recitation of the subject matter, and therefore denies the same.

82.     This paragraph contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr.

Dylewski acknowledges the general accuracy of the allegations contained in Paragraph 82, but asserts that it is an incomplete recitation of the subject matter, and therefore denies the same.

83.     This paragraph contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski acknowledges the general accuracy of the allegations contained in Paragraph 83, but asserts that it is an incomplete recitation of the subject matter, and therefore denies the same.

84.     This paragraph contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski acknowledges the general accuracy of the allegations contained in Paragraph 84, but asserts that it is an incomplete recitation of the subject matter, and therefore denies the same.

85.     Dr. Dylewski denies the allegations in Paragraph 85 of the Second Amended Complaint.

86.     This paragraph contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski admits that the Head Upright Tilt Test records blood pressure and heart rate on a minute by minute basis while the table is tilted in a head-up position at different levels and denies the remaining allegations in Paragraph 86 of the Second Amended Complaint.

87.     Dr. Dylewski denies the allegations in Paragraph 87 of the Second Amended Complaint.

88.     Dr. Dylewski admits that the statute of limitations limits claims to conduct occurring on or after June 5, 2008. Dr. Dylewski denies all remaining allegations in Paragraph 88 of the Second Amended Complaint.

89.     Dr. Dylewski admits that in various time periods, Burks served as a member of the South Miami Heart Center Advisory Board and the South Miami Heart Center Executive Committee and as Chair of the Cardiovascular Clinical Service Line and as Chair of the South Miami Heart Center Executive Committee, and that Dr. Dylewski's medical procedures were reviewed by various committees.  Dr. Dylewski admits that Interventional Cardiology/Cardiac Surgery ("ICCS") committees typically included vascular surgeons, interventional cardiologists, interventional radiologists, cardiac surgeons, medical cardiologists, and electrophysiology cardiologists, and that Dr. Ted Feldman and Dr. Francisco Rodriguez Moran also participated in various committees.  Dr. Dylewski denies the remaining allegations in Paragraph 89 of the Second Amended Complaint.

90.     Dr. Dylewski admits that he performed AV optimizations at South Miami Hospital. Dr. Dylewski denies that he performed medically outdated, unnecessary or not medically indicated AV optimizations. Dr. Dylewski is without knowledge of the remaining allegations of Paragraph 90 of the Second Amended Complaint, and therefore denies the same.

91.     Dr. Dylewski admits that he performed replacements of implantable cardiac devices at South Miami Hospital, and that certain replacements were reviewed. Dr. Dylewski denies that he performed improper or unnecessary replacements of implantable cardiac devices. Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 91 of the Second Amended Complaint, and therefore denies the same.

92.     Dr. Dylewski denies the allegations in Paragraph 92 of the Second Amended Complaint.

93.     Dr. Dylewski admits that Carol Biggs is the vice president of the South Miami Heart Center at South Miami Hospital. Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding whether Ms. Biggs attended committee meetings at South Miami Hospital and otherwise denies any remaining allegations in Paragraph 93 of the Second Amended Complaint.

94.     Dr. Dylewski admits that Dr. Ted Feldman is a cardiologist and Medical Director of the South Miami Heart Center at South Miami Hospital, with privileges to practice at South Miami Hospital. Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding whether Dr. Feldman attended committee meetings at South Miami Hospital and otherwise denies the remaining allegations in Paragraph 94 of the Second Amended Complaint.

95.     Dr. Dylewski admits that Lincoln Mendez is the Chief Executive Officer of South Miami Hospital. Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding whether Mr. Mendez attended committee meetings at South Miami Hospital and otherwise denies all remaining allegations of Paragraph 95.

96.     Dr. Dylewski admits that Dolores Earle is a nurse practitioner at South Miami Hospital and that Ellen Redick is in charge of the Performance Improvement at South Miami Hospital but lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 96 of the Second Amended Complaint, and therefore denies the same.

97.     Dr. Dylewski admits that Dr. Niberto Moreno is the Chief of Cardiothoracic Surgery at Baptist Health and that Dr. Lynn Harrison was a cardiothoracic surgeon and was

Clinical Director of Cardiac Surgery at Baptist Hospital but lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 97 of the Second Amended Complaint, and therefore denies the same.

98.     Dr. Dylewski is without knowledge of what Dr. Harrison has said, and therefore denies the same, and otherwise denies the allegations of Paragraph 98 of the Second Amended Complaint.

99.     Dr. Dylewski admits that ICCS committees reviewed certain services provided by Dr. Dylewski. The remaining allegations of Paragraph 99 of the Second Amended Complaint are denied.

100.     Dr. Dylewski denies that he performed any improper or medically unnecessary procedures and otherwise lacks knowledge or information sufficient to form an opinion regarding the truth of the allegations in Paragraph 100 of the Second Amended Complaint, and therefore denies the same.

101.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding whether Ms. Biggs attended committee meetings at South Miami Hospital or what was discussed at those meetings, and denies the remaining allegations in Paragraph 101 of the Second Amended Complaint, including that Dr. Dylewski was performing unnecessary procedures and that he was submitting false claims.

102.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding what conversations Burks had and what occurred at committee meetings, admits that some of his patients were ill and elderly, and denies the remaining allegations of Paragraph 102 of the Second Amended Complaint, including that Dr. Dylewski was performing unnecessary procedures and that he was submitting false claims.

103.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding what occurred at committee meetings and denies all other allegations in Paragraph 103 of the Second Amended Compliant, including that arrhythmia procedures performed by Dr. Dylewski were medically unnecessary, not clinically indicated, had no medical value, or that patient deaths resulted from his actions, and that he was putting patients at risk of surgical complications and infection.

104.     Dr. Dylewski denies that he performed procedures that were not clinically indicated, and lacks knowledge or information sufficient to form a belief regarding the remaining allegations in Paragraph 104 of the Second Amended Complaint.

105.     Dr. Dylewski admits that Dr. Ted Feldman was Medical Director of the South Miami Heart Center, denies that he performed procedures that were not medically required for the purpose of submitting medical bills, and lacks knowledge or information sufficient to form a belief regarding the remaining allegations in Paragraph 105 of the Second Amended Complaint.

106.     Dr. Dylewski admits that Dr. Harry Aldrich has served as the Chief of the South Miami Hospital Cardiovascular Clinical Service line, lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 106 of the Second Amended Complaint, except that Dr. Dylewski denies any wrongful medical practices or medically unnecessary procedures, patient harm and medically unnecessary use of AV optimization procedures.

107.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 107 of the Second Amended Complaint, except that Dr. Dylewski denies that he was overbilling for medically unnecessary arrhythmia procedures.

108.    Dr. Dylewski admits that Dr. Ted Feldman is a cardiologist and the former Medical Director of the Cardiovascular Department at South Miami Hospital, that Dr. Daniel Krauthamer is board certified in interventional cardiology, and Medical Director of the Cardiac Catheterization Lab at South Miami Hospital and that Dr. Hakop Hrachian is board certified in cardiovascular disease and clinical cardiac electrophysiology.  As to the remaining allegations in Paragraph 108 of the Second Amended Complaint, Dr. Dylewski denies that any of his medical practices were egregious and that he performed medically unnecessary arrhythmia medical procedures that provided no medical benefit and that he subjected patients to serious harm, and otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 108 of the Second Amended Complaint, and therefore denies same.

109.    Dr. Dylewski denies that he performed medically unnecessary arrhythmia procedures including those identified therein and that studies were performed in an excessive manner that provided no medical value and were not medically required, and otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 109 of the Second Amended Complaint, and therefore denies the same.

110.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 110 of the Second Amended Complaint, except that Dr. Dylewski denies that he performed outdated and unnecessary utilization of AV optimizations or otherwise performed procedures that were not medically required.

111.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 111 of the Second Amended Complaint, except that he denies that he performed any unnecessary AV optimizations and other arrhythmia procedures.

23

112.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 112 of the Second Amended, except that he denies that he performed any procedure that was not medically required nor clinically indicated.

113.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 113 of the Second Amended, except that he denies that he performed any procedure that included an inappropriate indication for device replacement and that he put patients at risk of injury or infection with no clinical benefit.

114.     Paragraph 114 contains Relators' expressions of general medical opinions about the field of cardiac electrophysiology, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 114 of the Second Amended Complaint, except that he denies that he indicated false information on any patients' chart, performed any improper procedures or submitted false claims or otherwise engaged in fraudulent conduct.

115.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 115 of the Second Amended Complaint.

116.     Dr. Dylewski denies the allegations in Paragraph 116 of the Second Amended Complaint, except that he is without knowledge as to whether Burks reviewed the medical charts of Dr. Dylewski's patients, and therefore denies the same.

117.     Dr. Dylewski denies the allegations in Paragraph 117 of the Second Amended Complaint, except that he is without knowledge as to whether Burks reviewed the medical charts of Dr. Dylewski's patients, and therefore denies the same.

118.    Dr. Dylewski denies the allegations in Paragraph 118 of the Second Amended Complaint.

119.    Dr. Dylewski denies the allegations in Paragraph 119 to the extent the allegations in the Second Amended Complaint are based on information that Relators received from the government during its investigation, which information is not based on Relators' personal knowledge.  Dr. Dylewski admits that attendees of peer review committee meetings, physicians and administrative representatives, had a duty not to publicly reveal confidential information imparted to them in such meetings, and admits that Dr. Burks, and other participating committee members, breached this duty, committing recurrent HIPPA violations according to the allegations made in the Second Amended Complaint.  Dr. Dylewski denies the remaining allegations in Paragraph 119 of the Second Amended Complaint.

120.    Dr. Dylewski admits that Davenport was employed by Arrhythmia Management Institute of South Florida, but left his employment before the statute of limitations bar date in this matter (as Relators acknowledge in footnote 4 of their Second Amended Complaint), was a member of the medical staff at South Miami Hospital, and was a board certified cardiologist, but not a board certified electrophysiologist, admits that Dr. Dylewski is a board certified cardiac electrophysiologist, and denies the remaining allegations in Paragraph 120 of the Second Amended Complaint.

121.    Dr. Dylewski admits that he and Davenport worked as members of the medical staff at South Miami Hospital, and denies the remaining allegations of in Paragraph 121 of the Second Amended Complaint, except that Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding Davenport's review of medical charts of Dr. Dylewski's patients.

122.    Dr. Dylewski denies all allegations in Paragraph 122 of the Second Amended Complaint, except that Dr. Dylewski, Davenport, and other doctors worked as members of the medical staff at South Miami Hospital performing EP procedures at different times.

123.    Dr. Dylewski denies all allegation in Paragraph 123 of the Second Amended Complaint, except that Davenport and Dr. Dylewski worked as members of the medical staff at South Miami Hospital and had occasion to use the same facilities as part of their respective practices but at different times.

124.    Dr. Dylewski denies all allegations in Paragraph 124 of the Second Amended Complaint, except that he lacks knowledge or information sufficient to form a belief regarding the truth of the allegations relating to conversations of South Miami Heart Center employees, and therefore denies the same.

125.    Dr. Dylewski denies all allegations in Paragraph 125 of the Second Amended Complaint, except that he lacks knowledge or information sufficient to form a belief regarding the truth of the allegations relating to conversations of South Miami Hospital employees, and therefore denies the same.

126.    Dr. Dylewski denies all allegations in Paragraph 126 of the Second Amended Complaint, except that he lacks knowledge or information sufficient to form a belief regarding the truth of the allegations relating to conversations of Ms. Biggs, and therefore denies the same.

127.    Dr. Dylewski denies all allegations in Paragraph 127 of the Second Amended Complaint, except that he lacks knowledge or information sufficient to form a belief regarding the truth of the allegations relating to conversations of Ms. Biggs, and therefore denies the same.

128.    Dr. Dylewski admits that Davenport, Dr. Dylewski, Hakop Hrachian, M.D., Giancarlo Speziani, M.D., and Elie Haddad, M.D., all worked as members of the medical staff at

South Miami Hospital performing electrophysiology procedures, and that if certain procedures lacked documentation of indications, the procedures would not be performed by Dr. Dylewski unless and until documentation was supplied. Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 128 of the Second Amended Complaint relating to conversations referred to therein, and therefore denies the same, and denies all remaining allegations in Paragraph 128 of the Second Amended Complaint.

129.    Dr. Dylewski admits that that Davenport, Dr. Dylewski, Hakop Hrachian, M.D., Elie Haddad, M.D., and Giancarlo Speziani, M.D. were members of an electrophysiology committee at South Miami Hospital, lacks knowledge or information sufficient to form a belief regarding the truth of the allegations relating to conversations referred to therein, and therefore denies the same, and denies all remaining allegations in Paragraph 129 of the Second Amended Complaint.

130.    Dr. Dylewski denies all allegations in Paragraph 130 of the Second Amended Complaint, except that he lacks knowledge or information sufficient to form a belief regarding the truth of the allegations relating to conversations referred to therein, and therefore denies the same.

131.    Dr. Dylewski denies all allegations in Paragraph 131 of the Second Amended Complaint, except that he lacks knowledge or information sufficient to form a belief regarding Davenport's personal knowledge, and therefore denies the same.

132.    Dr. Dylewski denies all allegations in Paragraph 132 of the Second Amended Complaint, except that he lacks knowledge or information sufficient to form a belief regarding Davenport's personal knowledge, and therefore denies the same.

133.     Dr. Dylewski denies all allegations in Paragraph 133 of the Second Amended Complaint, except that he lacks knowledge or information sufficient to form a belief regarding the truth of the allegations relating to conversations referred to therein, and therefore denies the same.

134.     Dr. Dylewski denies all allegations in Paragraph 134 of the Second Amended Complaint.

135.     Dr. Dylewski denies all allegations in Paragraph 135 of the Second Amended Complaint.

136.     Dr. Dylewski admits that Davenport and others were members of an electrophysiology committee at South Miami Hospital that received medical information about electrophysiology procedures, including procedures performed by Dr. Dylewski. Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 136 of the Second Amended Complaint, except that Dr. Dylewski denies that he performed procedures that were not medically indicated and of no medical value and submitted claims for payment for not medically indicated arrhythmia procedures.

137.     Dr. Dylewski denies all of the allegations in Paragraph 137 of the Second Amended Complaint.

138.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding what Davenport's personal knowledge is, the patients and procedures subject of Paragraph 138 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

139.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding what Davenport's personal knowledge is, the patient and procedures subject of Paragraph 139 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski misrepresented facts regarding any patient, performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

140.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding what Davenport's personal knowledge is, the patient and procedures subject of Paragraph 140 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

141.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding what Davenport's personal knowledge is, the patient and procedures subject of Paragraph 141 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski performed procedures that were not medically indicated, that fraudulent claims were submitted by Dr. Dylewski, and that Dr. Dylewski had any improper intent.

142.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding what Davenport's personal knowledge is, the patient and procedures subject of Paragraph 142 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

143.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding what Davenport's personal knowledge is, the patients and procedures subject of Paragraph 143 of the Second Amended Complaint, and otherwise denies the allegations therein, including that

29

Dr. Dylewski performed medically unnecessary AV optimization procedures and that fraudulent claims were submitted by Dr. Dylewski.

144.    Dr. Dylewski denies the allegations in Paragraph 144 of the Second Amended Complaint.

145.    The allegations in Paragraph 145 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 145 of the Second Amended Complaint to the extent they are inconsistent with the statutes or regulations referenced therein and are incomplete recitations of the law.

146.    The allegations in Paragraph 146 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 146 of the Second Amended Complaint to the extent they are inconsistent with the statute and any applicable rules, regulations, or guidance referenced, and are incomplete recitations of the law.

147.    The allegations in Paragraph 147 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 147 of the Second Amended Complaint to the extent they are inconsistent with the statute referenced and are incomplete recitations of the law.

148.    The allegations in Paragraph 148 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 148 of the Second Amended Complaint to the extent they are inconsistent with the statute referenced and are incomplete recitations of the law.

149.    The allegations in Paragraph 149 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in

Paragraph 149 of the Second Amended Complaint to the extent they are inconsistent with the statute referenced and are incomplete recitations of the law.

150.    The allegations in Paragraph 150 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 150 of the Second Amended Complaint to the extent they are inconsistent with the statute and regulations referenced and are incomplete recitations of the law.

151.    The allegations in Paragraph 151 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 151 of the Second Amended Complaint to the extent they are inconsistent with the statutes referenced and are incomplete recitations of the law.

152.    Dr. Dylewski admits that, before the statute of limitations bar date in this matter (as Relators acknowledge in footnote 4 of their Second Amended Complaint), a patient of Dr. Dylewski and the patient's wife pledged $10 million to the South Miami Hospital Foundation, and Dr. Dylewski became the Founder, Developer and Medical Director of the electrophysiology program at South Miami Hospital.  Dr. Dylewski denies all remaining allegations of Paragraph 152 of the Second Amended Complaint.

153.    Dr. Dylewski admits that, before the statute of limitations bar date in this matter (as Relators acknowledge in footnote 4 of their Second Amended Complaint), a patient of Dr. Dylewski and the patient's wife pledged $10 million to the South Miami Hospital Foundation, Dr. Dylewski became the Founder, Developer and Medical Director of the electrophysiology program at South Miami Hospital with no expiration date and regarding which he was compensated for his services consistent with fair market value.  Dr. Dylewski denies all remaining allegations Paragraph 153 of the Second Amended Complaint.

154.   Dr. Dylewski denies the allegations in Paragraph 154 of the Second Amended Complaint, except that he is without knowledge or information sufficient to form a belief regarding complaints by employees at the Cath Lab, and therefore denies the same.

155.   The allegations in Paragraph 155 set forth legal conclusions to which no response is required.   To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 155 of the Second Amended Complaint, except that South Miami Hospital entered into a compensation agreement with Dr. Dylewski for the Medical Directorship of the Cardiac Electrophysiology Program consistent with fair market value.

156.   Dr. Dylewski denies all allegations in Paragraph 156 of the Second Amended Complaint, except that he submitted HCFA 1500 forms to the government as required by applicable laws, rules, and regulations and that claims to the appropriate federal health care programs are often submitted for services performed for patients who are beneficiaries of those programs.

157.   Dr. Dylewski denies the allegations in Paragraph 157 of the Second Amended Complaint, except that he is without knowledge or information sufficient to form a belief regarding patient charts reviewed by the Relators and conversations Relators had with others, and therefore denies the same.

158.   Dr. Dylewski denies the allegations in Paragraph 158 of the Second Amended Complaint.

159.   Dr. Dylewski denies the allegations in Paragraph 159 of the Second Amended Complaint.

160.    Paragraph 160 contains legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations contained in Paragraph 160.

161.    Dr. Dylewski denies the allegations in Paragraph 161 of the Second Amended Complaint.

162.    Dr. Dylewski denies the allegations in Paragraph 162 of the Second Amended Complaint.

163.    This paragraph contains Relators' expressions of general opinions about fair market value and what other medical director positions require, rather than facts relating to Dr. Dylewski that may be admitted or denied, so no response is required. To the extent any response is required, Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the truth of the general opinions expressed by the Relators in Paragraph 163 of the Second Amended Complaint, and therefore denies the same.

164.    Dr. Dylewski denies the allegations in Paragraph 164 of the Second Amended Complaint.

165.    Dr. Dylewski denies the allegations in Paragraph 165 of the Second Amended Complaint.

166.    The allegations in Paragraph 166 set forth legal conclusions to which no response is required.  To the extent a response is required, Dr. Dylewski denies the allegations in Paragraph 166 of the Second Amended Complaint.

167.    Dr. Dylewski denies the allegations in Paragraph 167 of the Second Amended Complaint.

168.     Dr. Dylewski denies the allegations in Paragraph 168 of the Second Amended Complaint.

169.     Dr. Dylewski denies the allegations in Paragraph 169 of the Second Amended Complaint.

170.     Dr. Dylewski admits that he maintains records of medical charts and billing and that attendees of peer review committee meetings had a duty not to publicly reveal confidential information imparted to them in such meetings and that Relators breached this duty. Dr. Dylewski is without knowledge of medical charts reviewed by committees and collected by hospital representatives, and therefore denies the same. Dr. Dylewski denies the remaining allegations in Paragraph 170 of the Second Amended Complaint.

171.     Dr. Dylewski denies the allegations in Paragraph 171 of the Second Amended Complaint.

172.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the patient and procedures subject of Paragraph 172 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

173.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the patient and procedures subject of Paragraph 173 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

174.     Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the patients and procedures subject of Paragraph 174 of the Second Amended Complaint, and

otherwise denies the allegations therein, including that Dr. Dylewski performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

175.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the patient and procedures subject of Paragraph 175 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski provided false documentation, performed procedures that were not medically indicated, that Dr. Dylewski has reckless disregard for the health, welfare and safety of his patients, and that fraudulent claims were submitted by Dr. Dylewski.

176.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the patient and procedures and review by an ad hoc committee subject of Paragraph 176 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

177.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the patient and procedures subject of Paragraph 177 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski improperly documented information, performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

178.    Dr. Dylewski lacks knowledge or information sufficient to form a belief regarding the patient and procedures subject of Paragraph 178 of the Second Amended Complaint, and otherwise denies the allegations therein, including that Dr. Dylewski performed procedures that were not medically indicated and that fraudulent claims were submitted by Dr. Dylewski.

179.    Dr. Dylewski denies the allegations in Paragraph 179 of the Second Amended Complaint.

180.    Dr. Dylewski denies the allegations in Paragraph 180 of the Second Amended Complaint.

181.    Dr. Dylewski denies the allegations in Paragraph 181 of the Second Amended Complaint.

182.    Dr. Dylewski denies the allegations in Paragraph 182 of the Second Amended Complaint.

183.    Dr. Dylewski denies the allegations in Paragraph 183 of the Second Amended Complaint.

184.    Dr. Dylewski denies the allegations in Paragraph 184 of the Second Amended Complaint.

185.    Dr. Dylewski realleges and reincorporates by reference his answers to all allegations of the Second Amended Complaint in response to this Paragraph 185.   Any allegations in paragraphs 1-185 not specifically admitted are denied.

186.    Dr. Dylewski admits only that Relators purport to bring an action to recover alleged damages and civil penalties and to assert claims under the FCA.  However, Dr. Dylewski denies that Relators have any valid claims as against him or that Relators are entitled to any of the requested relief. Dr. Dylewski denies any remaining allegations in Paragraph 186 of the Second Amended Complaint.

187.    Dr. Dylewski denies the allegations in Paragraph 187 of the Second Amended Complaint.

188.    Dr. Dylewski denies the allegations in Paragraph 188 of the Second Amended Complaint.

189.    Dr. Dylewski realleges and reincorporates by reference his answers to all allegations of the Second Amended Complaint in response to this Paragraph 189. Any allegations in paragraphs 1-189 not specifically admitted are denied.

190.    Dr. Dylewski denies the allegations in Paragraph 190 of the Second Amended Complaint.

191.    Dr. Dylewski denies the allegations in Paragraph 191 of the Second Amended Complaint.

192.    Dr. Dylewski denies the allegations in Paragraph 192 of the Second Amended Complaint.

193.    Dr. Dylewski denies the allegations in Paragraph 193 of the Second Amended Complaint.

194-210.    Pursuant to Relators' Voluntary Dismissal of Counts III through VI of the Second Amended Complaint filed on June 13, 2016 (D.E. 136), Dr. Dylewski does not respond to the allegations of those counts or the corresponding paragraphs 194-210.  To the extent any response is required to Counts III through VI of the Second Amended Complaint voluntarily dismissed by Relators or the corresponding paragraphs 194-210, Dr. Dylewski denies the allegations of each of those counts and paragraphs.

## AFFIRMATIVE DEFENSES

Without admitting any of the allegations in the Second Amended Complaint, Dr. Dylewski asserts and alleges the following Affirmative Defenses.  By alleging the defenses below, Dr. Dylewski does not in any way agree or concede that Relators have properly stated any

cause of action in the Second Amended Complaint or that Dr. Dylewski has the burden of proof or persuasion with respect to any of his defenses.

## FIRST AFFIRMATIVE DEFENSE

Relators' causes of action are barred in whole or in part by the applicable statutes of limitations and by the doctrine of laches, estoppel, and waiver.  The statute of limitations bars all claims in this action based on conduct prior to June 5, 2008.

## SECOND AFFIRMATIVE DEFENSE

Relators' causes of action are barred by 31 U.S.C. § 3730(e)(4) because it is based upon allegations or transactions publicly disclosed in a federal report, hearing, audit, or investigation, and the Relators are not an "original source" as that term is defined by § 3730(e)(4)(B).

## THIRD AFFIRMATIVE DEFENSE

Relators' causes of action are barred because Dr. Dylewski did not make any false statements, records, or claims.

## FOURTH AFFIRMATIVE DEFENSE

The damages alleged by Relators, if any, are the results of the acts or omissions committed by third parties, whose actions or inactions cannot be imputed to Dr. Dylewski.

## FIFTH AFFIRMATIVE DEFENSE

Relator's causes of actions fail to state a claim for relief against Dr. Dylewski as a matter of law.

## SIXTH AFFIRMATIVE DEFENSE

To the extent Relators seek damages and/or penalties unrelated to or vastly greater than their actual damages, such damages or civil penalties would be unconstitutional because they

would be in violation of the Excessive Fines Clause of the Eighth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution

## SEVENTH AFFIRMATIVE DEFENSE

Dr. Dylewski preserves and asserts all affirmative defenses available under any applicable law.  Dr. Dylewski presently has insufficient knowledge or information upon which to form a belief as to whether he may have other, as yet unstated, defenses available.  Therefore, Dr. Dylewski reserves his right to supplement this Answer and to assert additional defenses in the event that discovery or other means indicate they would be appropriate.

## EIGHTH AFFIRMATIVE DEFENSE

Relator's claims fail in whole or in part because the alleged financial relationships relating to the L. Austin Weeks Heart Rhythm Center and Center for Electrophysiology complied with all applicable Stark Law requirements and all exceptions to the Stark Law pursuant to 42 U.S.C. § 1395nn; 42 C.F.R. § 411.357.

## NINTH AFFIRMATIVE DEFENSE

The asserted claims fail because differences in physician's or medical experts' opinions or clinical judgments as to the medical necessity of procedures cannot prove falsity as required for a cause of action under the False Claims Act.

## TENTH AFFIRMATIVE DEFENSE

The claims asserted in the Second Amended Complaint are barred, in whole or in part, because Dr. Dylewski acted at all relevant times in good faith and not with any improper or illegal purpose, intent or knowledge.  Each and every act or omission that Dr. Dylewski is alleged to have undertaken or failed to have undertaken in the Second Amended Complaint was

done or omitted in good faith and not with any improper or illegal purpose, intent or knowledge, and in conformity with all applicable federal and state statutes, and all applicable rules and guidance promulgated thereunder.

WHEREFORE, Dr. Dylewski denies that Relators are entitled to any relief whatsoever. Dr. Dylewski further request that this Court enter judgment in their favor and against Relators as follows:

A.  That Relators take nothing by reason of their Second Amended Complaint and that judgment be rendered in favor of Dr. Dylewski;

B.  That Dr. Dylewski be awarded their costs of suit incurred, pursuant to 31 U.S.C. § 3730(d)(4), including reasonable attorneys' fees; and

C.  For such other relief as this Court deems just and proper.

Dated: July 18, 2016

s/ Ronald Gainor
Ronald Gainor, Esq.
Florida Bar No. 606960
Amber Donner, Attorney at Law
Florida Bar No. 600032
3250 Mary Street, Suite 405
Miami, Florida 33131
O: 305-537-2000
F: 305-537-2001
C: 305-206-2008
Email:  gainorlaw@gmail.com
Counsel for Defendant John R. Dylewski

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 18, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel listed on the attached Service List.

*/s/ Ron Gainor*
Ron Gainor

<u>SERVICE LIST</u>
Burks, et al. vs. Dylewski, et al.
<u>Case No. 1:14-cv-22079 –Ungaro/Otazo-Ryes</u>

**Attorneys for Baptist Defendants**

Michael P. Matthews
mmatthews@foley.com
Foley & Lardner LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
Telephone:  (813) 225-4131
Facsimile:  (813) 221-4210

Angelica L. Boutwell
aboutwell@foley.com
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131

Telephone:  (305) 482-8400
Facsimile:   (305) 482-8600

**Attorneys for Relators:**

Tod Aronovitz
ta@aronovitzlaw.com
Barbara Perez
bp@aronovitzlaw.com
ARONOVITZ LAW
One Biscayne Tower
Suite 3700
2 South Biscayne Boulevard
Miami, FL 33131
(305) 372-2772 Telephone
(305) 397-1886 Facsimile

Spencer Aronfeld
aronfeld@aronfeld.com
Aronfeld Trial Lawyers
3132 Ponce de Leon Boulevard
Coral Gables, FL 33134
(305) 441-0440 Telephone
(305) 441-0198 Facsimile

**Attorneys for Defendant Dr. John R. Dylewski, M.D.:**

Ronald Gainor
Amber Donner
gainorlaw@gmail.com
Gainor & Donner
3250 Mary Street, Suite 405
Miami, Florida 33131
(305) 537-2000 Telephone
(305) 537-2001 Facsimile

**Attorneys for USA:**

John C. Spaccarotella
John.Spaccarotella@usdoj.gov
Assistant U.S. Attorney
Southern District of Florida
99 NE 4th Street, Third Floor Miami
Florida 33132
(305) 961-9212 Telephone